| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 2:24-CR-19** |
| | ) | |
| **DUSTIN HARRELL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS

The United States of America, represented by Jessica D. Aber, United States Attorney, and Matthew J. Heck, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. §3553(a).  According to the PSR, the defendant's offense level is 37 and the advisory calculation under the United States Sentencing Guidelines (U.S.S.G., or "Guidelines) is 235 to 240 months (restricted) of imprisonment, and up to a lifetime of supervised release.  The presentence report is correctly calculated.  In considering the 3553(a) factors the Government is requesting that the Court vary downward and sentence the defendant to 210 months incarceration coupled with 10 years of supervised release.

The defendant distributed, received, bought, and sold child sexual abuse material.  His active engagement in the on-line child pornography "community" distinguishes him from other child pornography defendants that this court has sentenced.  He participated in a chat group where child pornography was shared and was a member of Facebook groups named "Cute Teens 16-19," "Uncensored Teens," Family Maza Incst," and more.  This represents how deeply held his sexual attraction to children is, but also demonstrates how he validated and normalized this sexual attraction in others.  This behavior is disturbing on its own, but the defendant also openly discussed the molesting of children and the production of child pornography with others.  These

surrouding circumstances distinguish him from other individuals convicted of the same offense. Therefore, the Government is requesting a sentence of 210 months incarceration coupled with 10 years of supervised release.  This is sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. §3553(a).

## II. MOTION FOR ACCEPTANCE OF RESPONSIBILITY

Because of the defendant's timely plea, a motion to reduce the offense level an additional one point under U.S.S.G. § 3E1.1 is appropriate as has been done in this case. The government represents to the Court that this defendant has complied with *all* aspects of his plea agreement in all respects and fully to date.

## III. PROCEDURAL BACKGROUND

On February 8, 2024, the defendant, Dustin Harrell (HARRELL), was arrested.  ECF No. 8.  That same day he made his initial appearance, and he was temporarily detained. *Id*.  On February 13, 2024, the defendant waived his preliminary and detention hearing.  ECF No. 14. He has remained in custody since that time.  On March 6, 2024, HARRELL, was named in a six-count indictment charging him three counts of Distribution of Images Depicting Minors Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2), and three counts of Possession of Images Depicting Minors Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)(B).  PSR ¶ 1.  On April 9, 2024, pursuant to a plea agreement, HARRELL pled guilty to Count Three of the Indictment.  PSR ¶ 2.

## IV.  FACTUAL BACKGROUND

On October 12, 2023, FBI Norfolk received information from FBI Birmingham regarding Signal User: Dylan +1 \*\*\*-\*\*\*-0053, distributing one video of the visual depiction of minors

engaging in sexually explicit conduct (aka child sexual abuse material or CSAM) in a private

Signal group.  PSR ¶ 9.1.  Signal is a free messaging app with end-to-end encryption that keeps

communications private.  *Id*.  It can be used to send texts, voice messages, photos, videos, or

files for free.  *Id*.

October 12, 2023, an FBI Birmingham Online Covert Employee (OCE) accessed a

private Signal "channel."  PSR ¶ 9.3.  The OCE observed on October 12, 2023, at or around 1:48

PM, Signal User: "Dylan +1 ***-***-0053" shared a link to a Mega.nz account to the public chat

within this private channel.  *Id*.  Clicking the link allowed any user to download one CSAM

video.  *Id*.  The OCE clicked on this link which contained the video file described as follows:

> File name: A3D06994-8D66-4996-84B5-E285A0B32B73.mp4
> File length: Approximately 1 minute
> File Description: The video depicted a semi-nude adult male lying next to a newborn
> baby on the bed. The male's penis is erect and exposed. The male begins to forcefully
> stick his penis in the newborn's mouth and proceeds to insert his penis back and forth in
> the newborn's mouth. The newborn baby is screaming.

*Id*.

On October 12, 2023, FBI Birmingham requested the assistance of Mega.nz regarding the

subscriber information associated with this Mega account which was hosting the above-

referenced CSAM video.  PSR ¶ 9.5.   Mega provided that the Mega account was associated

with:

> Email: dharrell****@gmail.com
> Old Email: ryderdylan***@gmail.com
> IP Address during creation: 216.54.73.164:17871
> Creation Time Stamp: April 27, 2023, 12:45:27 PM UTC

*Id*.

The IP Address provided by Mega was assigned to Cox Communications. PSR ¶ 9.6. Cox Communications provided that the above IP Address resolved to a specific hotel in Virginia Beach, VA (the "Virginia Beach Hotel"). *Id*.

On January 3, 2024, law enforcement obtained a lawful search warrant from the U.S. District Court in the Eastern District of Virginia authorizing the search of these dharrell****@gmail.com and ryderdylan***@gmail.com. PSR ¶ 9.9. On January 8, 2024, law enforcement received account data from Google for both accounts. *Id*. A review of those accounts revealed a conversation where HARRELL communicated that he had secret photographs of him and a minor to whom he had access. PSR ¶ 11. In another conversation he discussed purchasing CSAM. PSR ¶ 11 and Exhibit 1. Further review of the account revealed an image that read "I [heart emoji] CP." Exhibit 2.

On January 29, 2024, law enforcement obtained records that the defendant's mother and a friend had rented a room at the Virginia Beach Hotel since September 2022. PSR ¶ 9.13. On this same day, hotel staff confirmed that the defendant was currently residing at the Virginia Beach Hotel. PSR ¶ 9.14.

On February 8, 2024, a search warrant was executed on the defendant's room located at the Virginia Beach Hotel. PSR ¶ 9.14. Law enforcement seized multiple electronic devices to include: a ZTE Blade A3 cellular phone, a LG LGL322DL cellular phone, and a Samsung SM-G955U cellular phone. *Id*.

The cellular phones were forensically examined by the FBI, and they were found to contain 267 images, 32 computer generated images, and five (5) videos of CSAM. PSR ¶ 12, 13, and 14. The Samsung SM-G955Ucontained three images of the defendant placing his penis over

the face of a minor to whom he had access. PSR ¶ 14. Also found on that device were conversations where HARRELL discussed topics of child pornography and incest, to include telling an individual "I used Paypal when I sold cp pics and videos." *Id*. This conversation is attached as Government Exhibit 3.

### V. DEFENSE OBJECTION THE PRESENTENCE REPORT

The defense objects to the five (5) level enhancement for distribution of child pornography for pecuniary gain pursuant to U.S.S.G. § 2G2.2(b)(3)(A) because there is insufficient evidence to support the application of the enhancement. The enhancement is supported by the preponderance of the evidence in this case and therefore, it has been correctly applied by probation.

The burden of proving aggravating factors under the sentencing guidelines is by a preponderance of the evidence. *See e.g. United States v. Vinson*, 886 F.2d 740, 741-42 (4th Cir. 1989); *United States v. Harris*, 992 F.2d 902 (4th Cir. 1989); and *United States v. Urrego-Linares*, 879 F.2d 1234 (4th Cir. 1989). U.S.S.G. § 2G2.2(b)(3)(A) applies a five (5) level enhancement if the offense involved distribution for pecuniary gain. Application note 1 to § 2G2.2 defines "distribution" as "any act, including the possession with intent to distribute, production, transmission, advertisement, and transportation."

In this case the evidence shows that the defendant purchased, sold, distributed, and possessed images of child pornography. The direct evidence supporting this enhancement is a conversation obtained from the defendant's cellular telephone in which he tells an individual "I used Paypal when I sold cp pics and videos." Government Exhibit 3. This message is supported by a conversation law enforcement discovered in the defendant's Google account where an

individual and HARRELL discuss a potential purchase of child pornography wherein the individual asks HARRELL if he has Cashapp or Paypal and HARRELL responds, "Yes I buy CP." Government Exhibit 2. Finally, HARRELL distributed child pornography on multiple occasions and possessed a large quantity of it. What all this evidence reveals is that the defendant had the knowledge, means, and desire to purchase and sell child pornography.

The Defense may argue, and the Government will concede that the Government did not obtain HARRELL's Paypal account and cannot present financial information related to the sale. However, that is not necessary for the Government to meet its burden. In *United States v. Brown*, the Fourth Circuit Court of Appeals upheld a district court decision to apply the pecuniary gain enhancement as the court could infer that the defendant distributed images with the expectation that he would receive some in return. 15 Fed. Appx. 180, 182 (4th Cir. 2001) (finding the court could properly infer the defendant exchanged child pornography for pecuniary gain based on his statement that he received child pornography and saved the pictures to send to others, despite his denials to the contrary.). The Government is not asking this court to make such leap, we are simply asking the court to believe the defendant's own statements. Statements that are supported by the other evidence in this case. Therefore, the five (5) point enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(A) was properly applied.

## VI. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 S. Ct.

85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 564. Finally, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 596-97. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

### VII. SENTENCING COMMISSION's RECOMMENDATIONS

In 2012, the Sentencing Commission published a report regarding the child pornography guidelines addressing many of the criticisms courts were having in applying the guidelines. *See* www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Off ense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm). (hereinafter Sent. Rep.)

In this report, the Sentencing Commission stated that there are several factors courts should consider in fashioning an appropriate sentence. These factors are:

1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology.)
2) the degree of an offender's engagement with other offenders – in particular, in an internet "community" devoted to child pornography and child sexual exploitation; and
3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

The Sentencing Report explains that even if only one of these aggravating factors is present, an enhanced punishment is warranted. (Sent. Rep. p. 321.) And if the defendant has aggravating factors in more than one category, then a more severe sentence is in order. (Sent. Rep. p. 321.)

## VIII. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court must consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

### A.      Seriousness of the Offense

HARRELL received and distributed CSAM since at least March of 2022. Over that time HARRELL distributed to numerous individuals, and on some occasions, paid for and sold child

pornography.  The Supreme Court recognized almost 40 years ago that the market of child pornography drives the sexual abuse of children to create more product.  *New York v. Ferber*, 458 U.S. 747, 750-60 (1982).  The defendant directly participated in that market place.  It stands to reason that the greater the person's involvement in the child pornography market, the greater their contribution to sexual abuse of children.  *See United States v. Pugh*, 515 F.3d 1179, 1194-95 (11th Cir. 2008); *United States v. Goff*, 501 F.3d 250, 259-60 (3d Cir. 2007); *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).  The exchange of CSAM for pecuniary gain is egregious and this conduct distinguishes the defendant from the types of child pornography offenders typically seen by this court.

HARRELL was actively involved in forums and groups that shared child pornography.  The Sentencing Commission considers this to be an important factor, because "[c]hild pornography communities make viewing of sexualized images of children acceptable and implicitly or explicitly condone sexual offenses against children…Child pornography communities can be social and supportive environments and can foster relationships among offenders.  These relationships appear to support development of deviant sexual beliefs concerning children and validate and normalize child sexual exploitation."  (Sent. Rep. p. 105.).  HARRELL had extensive communications with others exchanging child pornography and discussing the molestation of a minor who he had access to.  He was also a member of Facebook groups named "Cute Teens 16-19," "Uncensored Teens," Family Maza Incst," and more. Finally, this was not something he was ashamed of as demonstrated than the "I [heart emoji] CP" image found in his Google account.  HARRELL actively engaged in and perpetuated deviant sexual behavior in the child pornography community—validating this despicable behavior in others.

Based on the nature and circumstances of the offense the Government respectfully requests a sentence of 210 months.

**B.      The Need to Protect the Public**

There is a need to protect the public from HARRELL.  HARRELL's attraction to minors is clearly deeply held.  HARRELL fantasized with others about the molestation of minors and the production of child pornography.  Most disturbingly photographs were recovered from his cellular telephone of HARRELL holding his penis over the photographs of different young female faces, to include a minor he had access to.  This combined with his level of involvement in the child pornography community and his apparent pride in it are highly concerning. The Government has no evidence that HARRELL has ever committed a hands-on offense and that is a factor that weighs in HARRELL's favor.  However, there are clear warning signs in this case that should alarm the court.

**C.      The Need to Provide Treatment to the Defendant**

HARRELL is clearly in need to of treatment.  It appears he has struggled with alcohol and some form of drug addiction for most of his adult life.  PSR ¶ 58 and 59.  While he has not consumed alcohol since 2002, the Government would still ask the court to recommend both alcohol abuse and substance abuse treatment while HARRELL is incarcerated in the Bureau of Prisons (BOP).  Furthermore, the Government requests that HARRELL undergo sex offender treatment as well.

## V. CONCLUSION

For the reasons stated above, the government asks the Court to impose a sentence of 210 months incarceration coupled with ten (10) years of supervised release.

Respectfully submitted,

Jessica D. Aber
UNITED STATES ATTORNEY

By:                         /s/
Matthew J. Heck
Assistant United States Attorney
New York State Bar No. 5313341
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number - 757-441-3221
E-Mail Address – matthew.heck@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 2nd day of August 2024, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to the following:

Amanda C. Conner
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
(757) 457-0800


I further certify that on this 2nd day of August 2024, I caused a true and correct copy of

the foregoing Position of the United States with Respect to Sentencing Factors to be e-mailed to

the following:

Stephanie E. Hollier
United States Probation Officer Assistant
827 Diligence Drive
Suite 210
Newport News, Virginia 23510
(757) 223-4667


/s/
_____
Matthew J. Heck
Assistant United States Attorney
New York State Bar No. 5313341
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number - 757-441-3221
E-Mail Address – matthew.heck@usdoj.gov
